IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| SAMUEL FELIX | § | |
| | § | |
| v. | § | 2:10-CV-257 |
| | § | |
| UNITED STATES OF AMERICA | § | |

**REPORT AND RECOMMENDATION TO
DISMISS WITHOUT PREJUDICE
MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE
AND TO REINSTATE JUDGMENT IN CRIMINAL CASE**

Defendant SAMUEL FELIX has filed a Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. For the reasons set forth, the undersigned United States Magistrate Judge is of the opinion defendant is entitled to relief and recommends the Motion to Vacate, Set Aside, or Correct Sentence be DISMISSED without prejudice and the Judgment in criminal case 2:09-CR-028 be reinstated so as to allow defendant the opportunity to file an out-of-time appeal.

I.
PROCEDURAL BACKGROUND

In April 2009, a federal indictment against defendant SAMUEL FELIX issued charging him with possession with the intent to distribute more than 500 grams of methamphetamine. Defendant filed a Motion to Suppress, which was denied. After the Motion to Suppress was denied, defendant entered into a conditional Plea Agreement. That agreement provided, "[t]he defendant will appeal the Court's findings as to the validity of the stop, the defendant's detention, and the search of the car . . . the defendant will also appeal the admissibility of his post-arrest statement." *United States v. Felix*, No. 2:09-CR-028, "Plea Agreement," doc. 46, pgs. 3-4, filed June 1, 2009. The District

Court accepted defendant's guilty plea and sentenced him to 135 months' incarceration.

Judgment issued on September 3, 2009. On September 14, 2009, defendant's trial attorney filed a Notice of Appeal on defendant's behalf. On September 25, 2009, the Fifth Circuit mailed trial counsel a letter indicating the appeal would be dismissed unless the docketing fee was paid within ten days and the transcript was ordered within fifteen days. Counting from the date of the letter, the deadlines passed on October 5, 2009 and October 13, 2009,[1] respectively. The docketing fee was not paid nor was the transcript ordered. On October 30, 2009, defendant's appeal was dismissed for want of prosecution. On October 28, 2010, defendant filed this 28 U.S.C. § 2255 action.

## II.
## DEFENDANT'S ALLEGATION

In his sole ground of error, defendant contends his trial attorney's failure to prosecute the direct appeal of the criminal conviction constituted ineffective assistance of counsel in violation of the Sixth Amendment of the Constitution.

## III.
## THE MERITS OF DEFENDANT'S ALLEGATION

### A. Establishing Ineffective Assistance of Counsel

The proper standard for judging a defendant's contention he is entitled to relief on the ground that his trial counsel rendered ineffective assistance is enunciated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The test applies equally to the review of both trial and appellate proceedings. *Hughes v. Booker*, 220 F.3d 346, 348 (5th Cir. 2000). Under the two-

---

[1] October 10, 2009, was the actual deadline, but that day was a Saturday. The following Monday, October 12, 2009, was Columbus Day, which is a federal holiday. Therefore, the deadline would have been pushed to October 13, 2009.

pronged *Strickland* standard, a defendant must show defense counsel's performance was both deficient and prejudicial. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

An attorney's performance is deficient if the attorney made errors so serious he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *Id.*, 104 S.Ct. at 2064. Counsel's performance is viewed from counsel's perspective at the time of trial, not from hindsight. *Id.*, 104 S.Ct. at 2064. A reviewing court's scrutiny of trial counsel's performance is highly deferential, with a strong presumption that counsel's performance falls within the wide range of reasonable professional assistance. *Id.*, 104 S.Ct. at 2064. A defendant asserting his attorney's performance was ineffective "has the burden to prove ineffectiveness by a preponderance of the evidence." *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000). In cases regarding assistance of counsel on appeal, the Fifth Circuit has held, "[t]he Constitution requires that 'the client be advised not only of his right to appeal, but also of the procedure and time limits involved and of his right to appointed counsel on appeal.'" *United States v. Faubion*, 19 F.3d 226, 231 (5th Cir. 1994) (quoting *Qualls v. United States*, 774 F.2d 850, 851-52 (7th Cir. 1985)).

In order to meet the *Strickland* standard, it is not enough to merely show deficient performance by counsel. A defendant must also show counsel's deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In the context of an appeal, if the defendant alleges he was, either actually or constructively, denied the assistance of counsel altogether, no specific showing of prejudice is required. *Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000). In such cases, "the adversary process itself [is] presumptively unreliable." *Id.*, 120 S.Ct. at 1038 (quoting *United States v. Cronic*, 466 U.S. 648,

659, 104 S.Ct. 2039, 2047, 80 L.Ed.2d 657 (1984)). Consequently, prejudice is presumed. *See Roe v. Flores-Ortega*, 528 U.S. 470, 483, 120 S.Ct. 1029, 1038, 145 L.Ed.2d 985 (2000).

*B. The Evidence Regarding Representation*

On February 17, 2011, the Court conducted an evidentiary hearing on the claims in defendant's motion. At the hearing, defendant was represented by counsel appointed by the Court. Mr. John Lynch, who was defendant's trial attorney, along with Ms. Irma Borbolla, defendant's wife, testified. Defendant Felix was present but did not testify.

1. Testimony of Mr. John Lynch

In March 2009, defendant Felix was charged with possession with the intent to distribute 500 grams or more of methamphetamine. *See Felix*, 2:09-CR-28, "Criminal Compliant," doc. 1, filed March 30, 2009. The testimony of defendant's trial counsel, Mr. John Lynch, was that in April 2009, defendant's wife, Ms. Borbolla, retained Mr. Lynch to represent the defendant. *Id.*, "Entry of Appearance," doc. 21, filed May 1, 2009; (Transcript, Evidentiary Hearing and Motion to Vacate, Feb. 17, 2011, doc. 20 [hereinafter Tr.], pg. 5).[2] Mr. Lynch stated Ms. Borbolla interacted directly with Mr. Lynch on behalf of her husband a great deal because defendant Felix spoke only Spanish and Mr. Lynch spoke only English, while Ms. Borbolla was fluent in both Spanish and English. (*Id.* 11). When Mr. Lynch was initially hired, there was no discussion of what his role would be if the case advanced to the appellate stage. (*Id.* 54, 80).

In May 2009, Mr. Lynch filed a Motion to Suppress, which was denied. After denial of the motion, defendant and the government entered into plea negotiations. A Plea Agreement was

---

[2] The attorney's fees were paid by a man named Richard, who Ms. Borbolla stated had no personal connection to defendant, herself, or any friends and family. (Tr. 96). According to Ms. Borbolla, "[Richard] had the money and someone told me to ask him if he can help us and he did." (*Id.* 97).

reached which provided defendant would appeal the Court's findings as to the validity of the stop, detention, search of defendant's car, and the admissibility of defendant's post-arrest statement. *Felix*, No. 2:09-CV-028, "Plea Agreement," doc. 46, pgs. 3-4.  Mr. Lynch testified he understood defendant wanted to appeal the District Court's denial of the Motion to Suppress. (Tr. 31).

According to Mr. Lynch, once the sentence of 135 months' incarceration was entered in September 2009, he attempted to discuss the appeal with defendant. (*Id.* 61).  Mr. Lynch testified as follows during the February 2011 evidentiary hearing:

> Q. And after the defendant received his 135 month sentence, you testified that you and the interpreter went to speak with him in the holding cell; is that correct?
>
> A. That is correct.
>
> Q. And I believe your testimony [was] that he was, for lack of a better word, despondent, or angry, and refused to discuss with you his appellate rights?
>
> A. That is right.
>
> Q. And notwithstanding that, did you articulate his appellate rights during the meeting after the sentencing?
>
> A. I did, and I specifically, as is my normal routine, articulated that there is a time frame with respect to the filing of a notice of appeal.
>
> Q. Did he tell you whether or not he wanted you to file a notice of appeal?
>
> A. Mr. Felix at that point did not say anything to me, other than to shake his head. He was visibly upset and that was the end of the conversation.
>
> Q. And when you say he shook his head, was there any inference shaking his head no, or shaking his head yes?
>
> A. I believe he inst - or he stated in Spanish that he no longer wanted to discuss his case at that point; he was too upset.
>
> Q. When did you then speak with Ms. Borbolla regarding the outcome of this case? Was it right then after sentencing?

>   A.   Right then after sentencing we did speak on the parking lot at the courthouse minimally, and then we spoke via a series of telephone conversations regarding his case.
>
>   . . .
>
>   Q.   Did [defendant] ever express to you himself or Ms. Borbolla they either did or did not want you to pursue the appeal?
>
>   A.   Ms. Borbolla expressed that to me. Mr. Felix never sent any communication to me whatsoever until the filing of this 2255 motion.

(*Id.* 61-63). Because Mr. Lynch believed defendant wanted to appeal the District Court's denial of the Motion to Suppress based upon the plea negotiations, he stated he filed a Notice of Appeal as a courtesy to preserve the appellate rights he anticipated defendant would want to exercise. (*Id.* 62).

Mr. Lynch testified that after filing the Notice of Appeal he informed defendant's family of what his fees would be to prosecute the appeal. (*Id.* 63). The family members became frustrated, so Mr. Lynch informed them of the possibility of defendant proceeding *in forma pauperis*. (*Id.*). Mr. Lynch also testified he offered to apply for permission to appear before the Fifth Circuit in order to pursue the appeal (*Id.* 63-64), but Ms. Borbolla indicated, more than once, to Mr. Lynch that the family had retained a different attorney to prosecute the appeal and directed him not to pursue the appeal. (*Id.* 63-64).

Upon filing the Notice of Appeal, the Fifth Circuit, in a letter to Mr. Lynch, instructed "[a]ll counsel who desire to appear in this case must sign and return a form of appearance of counsel naming each party he represents within fifteen days." (*Id.* 64). Mr. Lynch said he intentionally did not file a Notice of Appearance with the Fifth Circuit because he believed he was not retained by the family nor appointed by the Court to pursue the appeal. (*Id.* 35). Mr. Lynch did, however, tell Ms. Borbolla the new appellate attorney hired by the family needed to file an entry of appearance

with the Fifth Circuit and contact him for all of defendant's trial records.  (*Id.* 63-64).

### 2.  Testimony of Ms. Irma Borbolla

Ms. Borbolla's testimony significantly differs from Mr. Lynch's.  According to Ms. Borbolla, after the sentencing Mr. Lynch asked her if he should pursue an appeal.  (*Id.* 86).  Ms. Borbolla told him to appeal the case.  (*Id.*).  Ms. Borbolla states she never told Mr. Lynch not to pursue the appeal and never told him the family had hired another attorney for the appeal.  (*Id.* 86, 90).  She states letters to her from Mr. Lynch indicated that he was, in fact, prosecuting the appeal (*Id.* 87), and that Mr. Lynch never told her that he was not pursuing an appeal.  (*Id.*)  She stated she never discussed additional attorney fees for the appeal, and was confused when she received a letter from Mr. Lynch dated October 29, 2009 in which Mr. Lynch instructed Ms. Borbolla to complete a series of documents to get an attorney appointed for the appeal.  (*Id.* 88, 90-91).

### 3.  Other Evidence

Also in evidence before the Court is a series of letters from Mr. Lynch to defendant Felix and defendant's wife, who acted as a translator between defendant and Mr. Lynch.  Defendant was sentenced on September 3, 2009.  On September 9, 2009, Mr. Lynch sent a letter to defendant in care of his wife, Ms. Borbolla.  *See Defendant's Exhibit* 9.  In that letter, Mr. Lynch stated "I would be happy to help you with any appellate issues should you choose.  As such, I have prepared and will file a Notice of Appeal with the 5th Circuit Court of Appeals – Texas." *Id.*  On September 14, 2009, Mr. Lynch filed the Notice of Appeal.

On October 5, 2009, the day of the deadline for paying the docketing fee on appeal, Mr. Lynch sent another letter to defendant in care of Ms. Borbolla.  *See Defendant's Exhibit 11*.  In that letter, he said,

> Enclosed please find a series of documents filed on your behalf with the United States District Court, Northern District of Texas. You will note that the latest filing included a Notice of Appeal as agreed to by the parties in entering the plea agreement at issue. Please note that I have also inquired of the court as to the proper paperwork for filing what is referred to as informa [sic] pauperis documentation in an effort to save you money and obtain counsel based on your present financial situation.
>
> In any event, *I will keep you apprised of any developments as they occur.* In the interim should you have any questions, please do not hesitate to contact me.

*Id.* (emphasis added). October 13, 2009 was the deadline for filing all of the necessary paperwork with the Fifth Circuit to keep the appeal alive. On October 29, 2009, several days after these deadlines had passed, Mr. Lynch sent to defendant another letter, saying:

> Enclosed please find a series of documents that must be completed in order for the court to appoint counsel to represent in [sic] the appeal presently pending in the United States Court of Appeals for the 5th Circuit Court. Essentially these documents declare to the court that you do not have funds available to pay counsel. Please use the assistance of any interpreters located at your present facility in order to assist you in filing these documents.

*Defendant's Exhibit 12*. This is the only letter after sentencing that Mr. Lynch sent directly to defendant (on which he also carbon copied Ms. Borbolla). While defendant offered no testimony as to whether he received and was able to understand this letter, Ms. Borbolla stated she understood the letter to mean that Mr. Lynch was not prosecuting the appeal. (Tr. 90-92). Ms. Borbolla took the letter to a local paralegal service, which helped her draft a letter to Mr. Lynch requesting defendant's files. (*Id.* 91-92). Ms. Borbolla stated she did not discover the Fifth Circuit had dismissed the appeal until February or April 2010. (*Id.* 94). At that point, Ms. Borbolla enlisted the assistance of a family member to help with the present motion under 28 U.S.C. § 2255. (*Id.* 93). Ms. Borbolla did not testify to having any further communications with Mr. Lynch regarding defendant's case.

*C. Defendant Received Ineffective Assistance of Counsel*

The issue is not whether defendant's counsel disregarded specific instructions to appeal the case or whether counsel consulted with defendant in an attempt to ascertain his wishes regarding appeal. *See Roe*, 528 U.S. at 477, 120 S.Ct.at 1035. The evidence in this case establishes defendant wanted to appeal, and his attorney knew he wanted to appeal. Indeed, the Plea Agreement, signed by Mr. Lynch and defendant, was conditional to allow for an appeal. *See Felix*, No. 2:09-cr-082, "Plea Agreement," doc. 46, pgs. 3-4 (stating "[t]he defendant will appeal . . ."). Although the defendant's unresponsive attitude immediately after sentencing as described by Mr. Lnych is unchallenged, the defendant's unresponsiveness did not indicate any change regarding his intention to appeal the Court's denial of the motion to suppress. The question to be resolved is whether defendant received ineffective assistance of counsel when his trial attorney abandoned the appeal. The Court concludes there was ineffective assistance of counsel and that defendant Felix is entitled to relief.

1. Counsel Took Actions Consistent with Those of an Attorney on Appeal

First, Mr. Lynch took actions consistent with those of an attorney on appeal, i.e. he stepped into the role of appellate attorney. There is no dispute that Mr. Lynch stated he would "be happy to" assist defendant with the appeal. *See Defendant's Exhibit 9*. In fact, on September 14, 2009 counsel timely filed a Notice of Appeal on defendant's behalf. In the October 5, 2009 letter to defendant in care of Ms. Borbolla, Mr. Lynch's statement "I will keep you apprised of any developments as they occur" indicates he was still working on the appeal as of that day. *See Defendant's Exhibit 11*. It is illogical to conclude an attorney not working on an appeal would tell his client he would keep the client apprised of developments in the appeal.

2. Counsel Never Clearly Severed the Attorney-Client Relationship Created on Appeal

Once Mr. Lynch stepped into the role of the appellate attorney, he never took definitive action, directly with his client or with the courts, to step out of that role. Mr. Lynch testified that in late September or early October 2009 Ms. Borbolla told him a different attorney would be prosecuting the appeal. (Tr. 63-64). There is nothing, however, in Mr. Lynch's post-conviction communications to defendant Felix or to defendant's wife (dated October 5, 2009 and October 29, 2009) implicitly or explicitly indicating the attorney-client relationship had ended.

Additionally, Mr. Lynch's reliance solely upon Ms. Borbolla's representations are inadequate to end the attorney-client relationship. First, all of the initial case deadlines occurred in early October. By the time Ms. Borbolla allegedly told Mr. Lynch a different attorney would be taking over, all deadlines had either passed or were quickly approaching. There is nothing indicating Mr. Lynch ever advised defendant or his wife of these deadlines, even if Ms. Borbolla did state another attorney would be taking over the appeal.

Moreover, there is no dispute that all of Mr. Lynch's post-conviction communications, except for the October 29, 2009 letter directing defendant to seek a court-appointed attorney, were with defendant's spouse instead of with the defendant himself. Mr. Lynch never directly consulted with defendant Felix despite the fact that his sole duty was to defendant Felix. Just because Ms. Borbolla may have indicated she did not want Mr. Lynch to pursue the appeal did not necessarily mean the defendant himself did not want Mr. Lynch to pursue an appeal. At the point Mr. Lynch began taking actions relating to the direct appeal on behalf of his client without first directly discussing those actions with his client, Mr. Lynch took the risk that his actions would either be contrary to his client's wishes or that his client would not be properly informed of important actions

in his case. Mr. Lynch relied upon the representations of his client's spouse, Mr. Borbolla, regarding his client's wishes, at his own peril.

If Mr. Lynch wanted to simply file the Notice of Appeal and end his representation in the case, he could and should have explicitly communicated such intent directly with the defendant, his client. He should have advised defendant Felix directly that the Notice of Appeal was filed as a courtesy and that there were quickly approaching deadlines in the case. Mr. Lynch should have timely told defendant he would not be pursuing the appeal unless he was appointed by the court or paid additional fees by defendant. If Mr. Lynch thought defendant's wife had hired another attorney, he should have communicated to defendant that he was not pursuing the appeal, even though he had filed the Notice of Appeal, because Ms. Borbolla had instructed him to drop the case. There is nothing before the Court indicating any of these essential attorney-client communications ever occurred.

Additionally, Mr. Lynch never took action in this Court or in the Fifth Circuit indicating any responsibility he may have undertaken in filing the Notice of Appeal had ended. Mr. Lynch's initial Notice of Appearance with this Court did not limit his role to that of counsel only for trial. Mr. Lynch never filed a Motion to Withdraw, either with this Court or the Fifth Circuit, indicating he was no longer on the case and documents in the case should be sent to an address other than his. It is of no consequence that Mr. Lynch never formally made an entry of appearance with the Fifth Circuit. It is clear the Fifth Circuit considered Mr. Lynch to be counsel of record. Moreover, the docket sheets indicating the attorney of record on a case are available online in this Court and in the Fifth Circuit. When Mr. Lynch saw he was still the attorney of record and was receiving correspondence from the Fifth Circuit on a case for which he thought he was no longer the attorney,

he had a duty to take action to correct the record. Instead, when he continued to receive documents from the Fifth Circuit, Mr. Lynch did not contact the court, forward the documents to defendant, or even call Ms. Borbolla to obtain the address of the new attorney she had purportedly hired. Mr. Lynch did nothing to disavow his role as appellate counsel when the Fifth Circuit continued to treat him as counsel of record.

### 3. Counsel Failed to Meet Appellate Deadlines

Even if Ms. Borbolla's testimony is discredited, the evidence indicates counsel was unaware of the appellate deadlines in this case. On October 5, 2009, the deadline for paying the docketing fee, Mr. Lynch sent Ms. Borbolla a letter. *See Defendant's Exhibit 11*. Nowhere does the letter mention the deadline for fees due on that day. Counsel does indicate in that letter, however, that he would "keep you apprised of any developments as they occur." *Id.* Mr. Lynch's next communication, after he stated he would keep defendant apprised of developments in the appeal, was dated October 29, 2009, when he sent to defendant, in the penitentiary, and to Ms. Barbolla a letter indicating defendant should seek the assistance of an interpreter and complete several forms requesting the appointment of an attorney to prosecute the appeal. *See Defendant's Exhibit 12*. By the time Mr. Lynch sent this letter, all of the initial deadlines had long passed, and the appeal was ripe for dismissal. In fact, the appeal was dismissed the very next day. The timing and content of these communications evidence counsel's unawareness of the appellate deadlines.

Defendant's attorney failed to timely advise defendant of the procedure and time limits involved in the direct appeal. *See Faubion*, 19 F.3d at 231. Mr. Lynch was silent as the various deadlines passed, and actively represented he was prosecuting the appeal on the day the first deadline expired. There is no evidence of any communication, and counsel himself never testified,

that he told defendant he had filed a Notice of Appeal and that the initial deadlines would be expiring in October 2009.  Mr. Lynch did eventually send defendant forms defendant needed to fill out to obtain a court-appointed attorney, but he sent the forms several days after all deadlines had passed and one day before the case was dismissed for want of prosecution.

Defendant Felix carries the burden of proof to show he received deficient representation by counsel on appeal.  *See United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).  Defendant Felix has met that burden.  The preponderance of evidence indicates Mr. Lynch took direct action as the attorney on appeal.  Consequently, he remained the attorney on appeal throughout its duration and acted deficiently in his prosecution of the appeal.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064; *Montoya*, 226 F.3d at 408.

Defendant Felix was prejudiced by this deficient performance.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.  Mr. Lynch abandoned the appeal without notifying defendant or any court that he was doing so.  Counsel did not inform his client of the procedure and time limits involved in an appeal.  By failing to inform his client of or act as counsel and meet the initial appellate deadlines, Mr. Lynch waived defendant's opportunity to make a case on the merits on appeal.  It is difficult to distinguish defendant's situation from that of someone who had no appellate attorney at all.  *See Evitts v. Lucey*, 469 U.S. 387, 395, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985).  Because defendant effectively had no attorney on appeal, the appellate proceedings are presumptively unreliable — there is no presumption of reliability to judicial proceedings that never took place.  *See Flores-Ortega*, 528 U.S. at 483, 120 S.Ct. at 1038.  Therefore, the Court presumes defendant was prejudiced by counsel's deficient performance.  *See id.*, 120 S.Ct. at 1038.

Since counsel's assistance on direct appeal of defendant' criminal case fell below an objective standard of reasonableness and prejudiced defendant's appeal. Defendant is entitled to an out-of-time appeal.

## IV.
## RECOMMENDATION

In instances where a district court concludes relief in the form of an out-of-time appeal is warranted on a 28 U.S.C. § 2255 motion, the district court should dismiss without prejudice the § 2255 motion, grant an out-of-time appeal, and reinstate the criminal judgment on the docket. *United States v. West*, 240 F.3d 456, 462 (5th Cir. 2001). Accordingly, it is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the Motion to Vacate, Set Aside, and Correct Sentence, filed by defendant SAMUEL FELIX be DISMISSED without prejudice, defendant be granted an out-of-time appeal, and the judgment in the criminal case, number 2:09-CR-028, be reinstated.

## V.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 29th day of June, 2012.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).